Default Document Processing
MAC N9286-01Y
1000 Blue Gentian Road
Eagan, MN 55121-7700



03/22/2019

MARYANN G BEHRENDT,
26 STEPHANI AVE
EAST PATCHOGUE, NY 11772-5524

THIS PAGE INTENTIONALLY LEFT BLANK

**Fill in this information to identify the case:**

Debtor 1    MARYANN G BEHRENDT

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Eastern District Of New York

Case number   1971033

Official Form 410S1

# Notice of Mortgage Payment Change    12/15

If the debtor's plan provides for payment of post-petition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:** Wells Fargo Bank, N.A.

**Court claim no.** (if known): NA

**Last 4 digits** of any number you use to identify the debtor's account: 7475

**Date of payment change:**
Must be at least 21 days after date of this notice    04/15/2019

**New total payment:**    $ 332.46
Principal, interest, and escrow, if any

## Part 1:  Escrow Account Payment Adjustment

1. **Will there be a change in the debtor's escrow account payment?**

   ☑ No
   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

   Current escrow payment:  $_____    New escrow payment:  $_____

## Part 2:  Mortgage Payment Adjustment

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate in the debtor's variable-rate note?**

   ☑ No
   ☐ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

   Current interest rate: _____%    New interest rate: _____%

   Current principal and interest payment: $_____    New principal and interest payment: $_____

## Part 3:  Other Payment Change

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**

   ☐ No
   ☑ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. (*Court approval may be required before the payment change can take effect.*)

   Reason for change: Payment to change due to cycle date.

   Current mortgage payment: $ 322.61    New mortgage payment: $332.46

618938966

Debtor 1     MARYANN G BEHRENDT_____     Case number *(if known)* 1971033
             First Name        Middle Name         Last Name

## Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☑ I am the creditor.

☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

/s/ Brandon Lolwing_____     Date  3/22/2019
Signature

Print:        **Brandon  Lolwing**_____     Title  Vice President Loan Documentation
              First Name      Middle Name       Last Name

Company       Wells Fargo Bank N.A._____

Address       1000 Blue Gentian Road,  N9286-01Y_____
              Number            Street

              Eagan, MN 55121-7700_____
              City                      State      ZIP Code

Contact phone  ( 877 ) 891 – 0002_____        Email  HEQBANKRUPTCYCH13@WELLSFARGO.COM

618938966

# UNITED STATES BANKRUPTCY COURT

Eastern District Of New York

Chapter 13 No. 1971033

In re:
MARYANN G BEHRENDT,

## CERTIFICATE OF SERVICE

I hereby certify that on or before **03/25/2019**, I served a copy of this Notice and all attachments upon each of the entities named below by the court's notice of electronic filing or by placing a copy thereof in an envelope, in the United States Mail with first class mail postage prepaid, addressed to each of them as follows:

Debtor:  By U.S. Postal Service First Class Mail Postage Prepaid:
MARYANN G BEHRENDT,
26 STEPHANI AVE
EAST PATCHOGUE, NY 11772

Debtor's Attorney:  By Electronic Court Filing:
RICHARD A JACOBY
1737 N OCEAN AVE
MEDFORD, NY  11763

Trustee:  By Electronic Court Filing:
MARIANNE DEROSA
125 JERICHO TPKE
STE 105
JERICHO, NY 11753

/s/ Brandon  Lolwing

618938966

# WORLD SAVINGS

## EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

Equity Account Number:                      Date of Agreement  X̶0̶8̶/̶1̶8̶/̶0̶5̶X̶    08/23/05 MB

Borrower's Name:    MARYANN BEHRENDT
                     SCOTT BEHRENDT

### Facts About Your Equity Account

Your Credit Limit is: $    44,000.00

The Property securing your responsibilities under this Equity Account is:
     26 STEPHANI AVE
     PATCHOGUE, NY 11772

Your due date for periodic Equity Account payments is the  15TH  day of the month

#### Rate Information

Initial ANNUAL PERCENTAGE RATE.        7.908 %
Initial Daily Periodic Rate.                  .0216700 %

☐ If this box is checked, your initial Annual Percentage Rate and its corresponding Daily Periodic Rate are discounted for the first *** months from your Account Opening Date If this discount were not in effect, the following initial rates would apply:

ANNUAL PERCENTAGE RATE          7.908 %
Daily Periodic Rate                       .0216700 %

The ANNUAL PERCENTAGE RATE may not increase above    14.95 % (the "Maximum Rate").

The ANNUAL PERCENTAGE RATE may not decrease below    5.250 % (the "Minimum Rate")

The Margin for this Equity Account is  FIVE AND 25/100  percentage points (  5.25  %) The Index for this Equity Account is *Certificates of Deposit Index* (as more fully described in Section 7 below)

#### Closing Costs

You will pay the following fees and charges when you open your Equity Account:

| | | |
|---|---|---|
| a) Origination fee (a **FINANCE CHARGE**) | $ | 200.00 |
| b) Application fee (a **FINANCE CHARGE**) | $ | .00 |
| c) Document preparation fee (a **FINANCE CHARGE**) | $ | .00 |
| d) Credit analysis fee (a **FINANCE CHARGE**) | $ | .00 |
| e) Appraisal/Property Valuation fee (a **FINANCE CHARGE**) | $ | .00 |
| f) Ongoing flood determination fee (a **FINANCE CHARGE**) | $ | .00 |
| g) Funding fee (a **FINANCE CHARGE**) | $ | .00 |
| h) Closing/settlement fee | $ | .00 |
| i) Attorney's closing/settlement fee | $ | .00 |
| j) Tax service fee (a **FINANCE CHARGE**) | $ | .00 |
| k) Courier fee | $ | .00 |
| l) Trust review fee (a **FINANCE CHARGE**) | $ | .00 |
| m) Initial flood determination fee (a **FINANCE CHARGE**) | $ | .00 |
| n) Title examination fee | $ | .00 |
| o) Title insurance fee | $ | .00 |
| p) Notary fee | $ | .00 |
| q) Recording fee | $ | .00 |
| r) Mortgage/Intangible property tax/Recording tax | $ | 352.00 |
| s) Improvement location certificate/survey fee | $ | .00 |
| t) City/County tax/stamps | $ | .00 |
| u) State tax/stamps | $ | .00 |
| v) Tax Certificate fee | $ | .00 |

**1. This Agreement And Your Equity Account.** This Agreement (the "Agreement") governs your Equity Line of Credit ("Equity Account") with   WORLD SAVINGS BANK, FSB, * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * a federally chartered savings institution with its home office located in Oakland, California ("World Savings"). Read this Agreement carefully It explains how your Equity Account works

In this Agreement, "you," "your," and "yours" refer to each person who signs this Agreement. "We," "us," and "our" refer to World Savings and its assignees or successors. "Security Instrument" means the mortgage, deed of trust or security deed that secures the Advances (defined below) and other obligations with respect to your Equity Account. The word "may" gives sole discretion without any obligation to take action.

**2. Promise To Pay.** You promise to repay all Advances and to pay all Finance Charges, fees and other charges due under this Agreement, and all other amounts due under the Security Instrument in accordance with their terms. A billing cycle is a period of time, usually about one month, that we use to determine when to bill you for amounts owed under this Agreement. You must pay at least the minimum payment for each billing cycle by the scheduled due date indicated on the billing statement we will send to you The first billing cycle for your Equity Account will begin on the first day after all of the following events have occurred you have met all conditions to establish the Equity Account, this Agreement is accepted by us, and we have reasonably concluded that no one has exercised a right of rescission in connection with the Equity Account. That day is referred to as the "Account Opening Date" You also must pay, in a single payment, any amounts you still owe under this Agreement or the Security Instrument 30 years from the first billing cycle's scheduled due date (the "Maturity Date") or any sooner closure or termination of your Equity Account.

**3. Obtaining Advances .** You can obtain loans from your Equity Account in the form of "Advances" Your ability to obtain Advances is subject to your Credit Limit, which is the amount shown above in the "Facts About Your Equity Account" box. Your Credit Limit is the maximum amount of Advances (i.e., principal) you may have outstanding at any one time You can obtain Advances up to the Credit Limit, repay any portion of the Advances, and again obtain Advances up to the Credit Limit. You will first be able to receive Advances on the Account Opening Date In determining the amount of available credit at the time you request an Advance, we may, in our sole discretion, consider unavailable the amount of any payment received by us that has not had a reasonable time (not to exceed 5 business days) to be collected through the banking system.

You agree to pay the Closing Costs shown above in the "Facts About Your Equity Account" box at the time your Equity Account is opened. The Closing Costs will be charged to your Equity Account as an Advance on the Account Opening Date, unless paid in certified funds to us or the settlement agent, if any, on or before that date You also may request additional Advance amounts at the time you open your Equity Account to pay debts you owe others and to obtain cash These additional Advance amounts will be charged to your Equity Account on the Account Opening Date

You can request Advances during the "Advance Period" by using special "Advance Checks" we supply to you The Advance Period lasts for 10 years from the Account Opening Date. You can request an Advance by writing an Advance Check to a third party or by submitting an Advance Check or "Advance Request" at one of our savings branches The term "Advance Check" as used in this Agreement includes Advance Requests unless the context requires otherwise Each Advance Check must be written for at least the minimum amount of $250. We may refuse to honor an Advance Check for less than this minimum amount.

We may refuse to make any Advance that would cause you to exceed your Credit Limit. If we do make such an Advance, it does not mean your Credit Limit has been raised. We may require you to repay any amount over your Credit Limit at once A fee of   $ 20.00 * * * *   may be charged to your Equity Account for any Lender Advance (defined below) or request for an Advance that we receive that either would cause you to exceed your Credit Limit or is received when you have already exceeded your Credit Limit, whether or not we make the requested Advance

After the Advance Period, your right to obtain Advances ends and the "Repayment Period" begins The Repayment Period lasts until the Maturity Date, approximately 20 years. If you have no outstanding Advances at the end of the Advance Period, your Equity Account will be closed at that time.

In addition to your ability to obtain Advances during the Advance Period, the Security Instrument gives us the right, in certain circumstances, to advance funds if you do not fulfill your obligations under the Security Instrument ("Lender Advance") Lender Advances will be charged to your Equity Account as Advances, even if (a) doing so will cause you to exceed your Credit Limit, (b) you have already exceeded your Credit Limit, or (c) the Advance Period has ended. Unless the context in this Agreement requires otherwise, the term "Advances" shall include Lender Advances

**4. Your Minimum Payment .** You may repay all or part of the amounts you owe under your Equity Account at any time without penalty. Each billing cycle you must pay at least the minimum payment specified below

During the Advance Period, your minimum payment will be the sum of, as applicable, accrued periodic Finance Charges, Advance amounts over your Credit Limit, escrow account amounts, fees charged under this Agreement, including over-the-Credit Limit, annual, late, copy and research, non-sufficient-funds (NSF), and stop payment request fees ("Equity Account Fees"), past due amounts, and credit insurance premiums

During the Repayment Period, your minimum payment will be the sum of, as applicable, accrued periodic Finance Charges, Advance amounts over your Credit Limit, escrow account amounts, Equity Account Fees, past due amounts, and credit insurance premiums, plus a fraction of your outstanding Advances. For each billing cycle, the fraction will be 1 divided by the number of billing cycles remaining until the Maturity Date For example, the fraction for the first payment during the Repayment Period, assuming there are 240 billing cycles until maturity, is 1/240, the fraction for the second payment during the Repayment Period is 1/239, and so on Depending upon the number of days between your Account Opening Date and your first billing cycle's scheduled due date, your Repayment Period actually may have 241 or 242 billing cyles The last of these billing cycles may be substantially shorter than a full month

If there are any outstanding and unpaid Advances, accrued Finance Charges, escrow account amounts, Equity Account Fees, credit insurance premiums, or any applicable early closure or release fees owing at the Maturity Date or any sooner closure or termination of your Equity Account (including any acceleration of your payment obligations under Section 16 below), you agree to pay in full all amounts owing at that time

We are not obligated to pay you interest if your payments or other credits result in a credit balance.

**5  Property Securing this Equity Account.** To secure your responsibilities under this Agreement and the Security Instrument, you are giving us a security interest in the Property shown above in the "Facts About Your Equity Account" box  Someone buying your Property may not assume this Equity Account  The Security Instrument provides

"**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or an interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law."

**6  Initial Annual Percentage Rate and Daily Periodic Rate.** The initial Annual Percentage Rate and its corresponding Daily Periodic Rate are shown above in the "Facts About Your Equity Account" box. The Annual Percentage Rate and the Daily Periodic Rate do not include costs other than interest. These rates can change as described below

**7. Variable Rate Information.** The Annual Percentage Rate and its corresponding Daily Periodic Rate are variable rates and can increase or decrease each billing cycle based on changes in the Index (defined below). Rate changes will occur on the first day of billing cycles, however, if you have a discounted initial rate, your rate will change for the first time on the day after the discounted rate period ends, which may be on a day other than the first day of a billing cycle  Assuming the same Advance balance and number of days in the billing cycle, an increase in the Annual Percentage Rate and its corresponding Daily Periodic Rate will result in a higher periodic Finance Charge and higher minimum payment, and a decrease will result in a lower periodic Finance Charge and lower minimum payment

We determine the Annual Percentage Rate for each billing cycle by adding the Margin shown above in the "Facts About Your Equity Account" box to the Index. We then determine the corresponding Daily Periodic Rate by dividing the Annual Percentage Rate by 365 (including during leap years)  However, the Annual Percentage Rate will never be more than the Maximum Rate or less than the Minimum Rate shown in the "Facts About Your Equity Account" box

Your Interest rate will be based on the Certificates of Deposit Index ("Index")  The Index is the average of the last twelve calendar months' most recently published monthly yields on 3-month certificates of deposit (secondary market) as published by the Federal Reserve Board  We will calculate the average by adding the twelve most recently published yields together and dividing the result by twelve  We will then round the result of this division to the nearest one-thousandth of one percentage point (0 001%) by using the following convention  if the value of the 10,000th place is five or greater, the value of the 1,000th place will round up, if the value of the 10,000th place is less than five, the 1,000th place will not change  The most recent Index figure available on the first day of your billing cycle, is called the "Current Index". For purposes of determining the Index, "published" means first made available to the public by the Federal Reserve Board

We may choose an alternative index to be the index if the Index is no longer available  The Index is not "available" if (a) the monthly yield on 3-month certificates of deposit (secondary market) is for any reason no longer published; or (b) we, in our sole discretion, determine that the monthly yield on 3-month certificates of deposit (secondary market) is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Agreement; or (c) applicable laws or regulations prevent us from using the Index to calculate interest under this Agreement. Subject to applicable law, the selection of the alternative index shall be at our sole discretion  We will give you notice of the alternative index

**8. Periodic Finance Charges.** Finance Charges begin accruing on each Advance on the day the Advance is charged to your Equity Account  There is no "free ride" period which would allow you to avoid Finance Charges on an Advance  Finance Charges accrue on outstanding Advances until repaid

To calculate the periodic Finance Charge on Advances in a billing cycle, we multiply the Daily Periodic Rate for that billing cycle by the average daily balance of Advances for that billing cycle, and then multiply this result by the number of days in that billing cycle. If there is more than one Daily Periodic Rate within a billing cycle, the periodic Finance Charge will be the sum of the Finance Charges calculated by multiplying each Daily Periodic Rate by the average daily balance, and then multiplying these results by the number of days each such Daily Periodic Rate is in effect.

To calculate the average daily balance of Advances for a billing cycle, we take the daily balance of Advances for each day in the billing cycle, add all the daily balances, and divide this sum by the number of days in the billing cycle Daily balances are determined by taking the Advance balance at the beginning of each day, adding any Advances charged that day, and subtracting any payments or credits applied to outstanding Advances that day

Finance Charges do not accrue on the Equity Account Fees (that is, the over-the-Credit Limit, annual, late, copy and research, non-sufficient-funds (NSF), and stop payment request fees) However, these fees will be due and payable in full as part of the minimum payment you owe us for the billing cycle in which these fees are charged to your Equity Account. Fees charged in connection with the closure or termination of your Equity Account, such as early closure and release fees and actual recordation or filing charges, will be immediately due and payable in full

**9 Annual Fee** No annual fee is charged during the first year of your Equity Account or during the Repayment Period You agree to pay a non-refundable fee of **$ 50.00** each year (except the first) during the Advance Period. The annual fee will be charged to your Equity Account on the first through ninth anniversaries of the Account Opening Date

**10. Late Fee** If you do not pay at least the minimum payment within **15** days after the date it is due, a late fee of the greater of **$15.00 OR 5.00%** of the billed Finance Charges and Advance repayment amount will be charged to your Equity Account.

**11. Early Closure Fee.** If you close your Equity Account within 3 years of the Account Opening Date, you agree to pay an early closure fee **OF $500.00.**

**12. Copy and Research Fees** You may request copies of billing statements or canceled Advance Checks or ask us to research questions about your use of the Equity Account. A fee of **$ 5.00** per item and a research fee of **$ 20.00** per hour will be charged to your Equity Account You will not be charged for copies or research that results from your questions about a possible billing error or mortgage servicing inquiry

**13 Payments** Payments must be made by check or money order mailed to us at the address indicated on your billing statement. Payments cannot be made by Advance Checks All payments must be drawn on the U.S Postal Service or a financial institution located in the United States of America and payable in U.S Dollars If you are making a payment to cure a default or to pay off your Equity Account so as to obtain a release of the Security Instrument, we may require you to make such payment with immediately available funds, such as a cashier's check.

We can accept late payments, partial payments, and checks or money orders marked "paid in full" or containing similar language without losing any of our rights under this Agreement. A non-sufficient-funds (NSF) fee of **$ 20.00** for each payment check that is returned unpaid will be charged to your Equity Account

Payments and credits will be applied first to payments then due, from the oldest to the most recent due, in the following order: billed Finance Charges, Advance repayment amounts, escrow account amounts, credit insurance premiums, and Equity Account Fees, and then to outstanding Advances Payments are not processed on Sundays or federal holidays observed by us. If a due date falls on one of these days, you will incur additional periodic Finance Charges if your payment is not posted on or before our preceding business day

**14. Adjustments.** We may make adjustments to your Equity Account to correct, for example, Advances or credits posted in the wrong amount or to the wrong account, or if a posting is delayed, a payment check is returned unpaid, or we discover this Agreement contains a clerical or systems error

**15 Release.** We will release the Security Instrument after the Maturity Date, or upon any sooner closure or termination of your Equity Account, if all amounts due under this Agreement and the Security Instrument have been paid Before we give you a release, you must destroy all unused Advance Checks. You agree to pay any actual recordation or filing costs or fees charged by the local governmental authority You also agree to pay us a reconveyance or release fee as provided in the Security Instrument

**16. Default.** You will be in default if

- You engage in fraud or material misrepresentation at any time in connection with your Equity Account.
- We do not receive the full minimum payment when due or you otherwise default in your repayment obligations.
- Your action or inaction adversely affects the Property or our rights in the Property The following list contains examples of actions or inactions that adversely affect the Property or rights in the Property.

    1 The only remaining borrower on your Equity Account dies
    2 The Property is used for an illegal purpose
    3 You transfer or attempt to transfer all or part of your interest in the Property (see Section 5 above)
    4 All or part of the Property is taken by condemnation or eminent domain
    5 You are in default on any prior lien on the Property
    6. You fail to maintain required insurance on the Property.
    7 You fail to pay when due real property taxes and assessments on the Property
    8 You fail to keep the Property properly maintained and in good repair.

If you default, we may terminate your Equity Account, require you to immediately repay in a single payment the entire amount owed to us under this Agreement and the Security Instrument, and exercise any of our rights under law, including causing your home to be sold at foreclosure sale You agree to pay us for our costs related to collection and foreclosure whether or not there is a lawsuit, including our reasonable attorney's fees, court costs and post-judgment collection services, including such fees and costs incurred in civil or bankruptcy proceedings and appeals involving our efforts to modify or vacate an automatic stay or injunction You further agree that the amount necessary to cure any default under this Agreement includes the entire amount of defaulted payment(s), Advances charged to your Equity Account pursuant to our rights under the Security Instrument, Finance Charges accrued on outstanding Advances since the time(s) of default, and our related collection and foreclosure costs as specified above

**17  Cancellation of Credit Privileges.** We can refuse to make additional Advances, or we may reduce your Credit Limit if.

- The value of the Property declines significantly below its original appraised value for purposes of the Equity Account.
- We reasonably believe you will not be able to meet the repayment requirements set forth in this Agreement due to a material change in your financial circumstances.
- You fail to meet any material obligation you have under this Agreement.
- You are in default under Section 16 above.
- Government action prevents us from imposing the Annual Percentage Rate provided for in this Agreement.
- Government action impairs our security interest such that the value of our interest is less than 120 percent of your Credit Limit.
- A regulatory agency that supervises us has notified us that continued Advances would constitute an unsafe and unsound practice
- You become the subject of a proceeding in bankruptcy.
- There is more than one borrower on this Equity Account, one of you dies, and that adversely affects our interest in the Property
- The maximum Annual Percentage Rate we are permitted to charge under this Agreement is reached

If we refuse to make additional Advances or we reduce your Credit Limit, and you believe your Advance privileges or Credit Limit should be reinstated, you must send us a written request for reinstatement The written request must include the reasons why you believe your Advance privileges or Credit Limit should be reinstated

**18.  Delay in Enforcement.** We may waive or delay enforcing our rights under this Agreement without losing them. Any waiver or delay will not relieve you of any of your obligations We may waive or delay enforcing a right as to one of you without waiving it as to the others We may release any security or any one of you from your responsibilities under this Agreement without releasing the others. We need not give anyone notice of our waiver, delay or release. We may bring legal action against any one of you without bringing action against the others

**19.  Updating Financial Information.** You agree to provide us with updated financial information at our request. You also authorize us to obtain new credit reports on you, without telling you, in connection with a review of your Equity Account. If you want to know the name and address of the consumer reporting agency from whom we obtained a credit report on you, ask us and we will tell you

**20.  Authorized Use.** The Advance Checks issued to you are to be used only by a person whose name is printed on the front of the Advance Checks and who has signed this Agreement If you permit anyone else to use your Advance Checks without our consent, you will be obligated to pay for any Advances obtained by that person plus any Finance Charge and other charges attributable to such Advances

**21.  Stop Payment Requests.** If you ask us to stop payment on an Advance Check, you must tell us the name of the payee, the amount, date and number of the Advance Check, and who signed it We are not bound by a stop payment request unless we have a reasonable opportunity to act on it and will not be liable for failing to stop payment if we used ordinary care We will honor an oral request for 14 days, but it will lapse if not confirmed in writing within that period. We will honor a written stop payment request or a written confirmation of an oral request for 6 months. You agree to indemnify us and will pay all costs and expenses we incur (including reasonable attorney's fees) as a result of honoring your stop payment request. This indemnity will survive any termination of this Agreement. You agree to pay a fee of  $ 20.00 for each stop payment request, which will be charged to your Equity Account.

22. **Lost or Stolen Advance Checks.** You may be liable for unauthorized use of your Equity Account You agree to notify us promptly by telephone, letter mailed separately from your periodic payment or any other reasonable means (but not by writing on, or enclosing a note with, your payment coupon) if any of your Advance Checks are lost or stolen If you give us oral notice, we may require you to provide written notice Written notice is not effective until received by us. You also agree to cooperate with us or any law enforcement agency in any effort to investigate the circumstances surrounding the incident and in efforts to minimize potential losses to you or us stemming from the incident.

23. **Other Rules Regarding Advance Checks.** You may use Advance Checks for any legal purpose other than to make payments on your Equity Account. We are not responsible if other parties refuse to accept your Advance Checks When you use the Advance Checks, you agree to waive, to the extent permitted by applicable law, any right you may have to notice of dishonor, presentment, provisional or final settlement within a given time, or any other related right You agree that the Advance Checks we supply you with are our property and that you will destroy them at our request. We may honor postdated Advance Checks when we receive them We are not required to certify Advance Checks

24. **Applicable Law.** This Equity Account was approved by, and your Advance Checks will be drawn from accounts of, World Savings in the State of California. This Agreement is to be construed in accordance with and governed by federal laws, rules, and regulations, including those for federally chartered savings institutions, and laws of the State of California, without regard to conflict of laws provisions. This choice of law is made notwithstanding the fact that you or the Property may be in another state, or that the Security Instrument may be governed by (except to the extent preempted by federal laws, rules and regulations) the laws of the state in which the Property is located.

25. **Joint Account** Each person who signs this Agreement is jointly and individually responsible for payment of all amounts owing under your Equity Account regardless of who actually requested the Advances or incurred the fees or charges Each of you has the right, upon proper written notice to us, to have the Credit Limit reduced or to suspend the privilege of obtaining new Advances. We have 5 business days after receipt of your request to take action on it. Such a request, even if made only by one of you, will be effective against all of you Any request to reinstate the Credit Limit or Advance privileges has to be made by all of you, even if only one of you requested the Credit Limit reduction or the suspension of Advances You agree to indemnify us and hold us harmless, and to pay all costs and expenses we incur (including reasonable attorney's fees) as the result of honoring a request made by any one of you under this Section

26 **Amendment.** We may change the terms of this Agreement if you agree to the changes in writing We also may change terms of this Agreement without your prior agreement if the change is beneficial to you or if it is insignificant (such as a change relating to our loan servicing systems). We will notify you of any changes in accordance with applicable law The terms of this Agreement cannot otherwise be modified without our prior written approval

27. **Billing Statements** You may not receive a billing statement during each billing cycle, if, for example, there has been no activity in your Equity Account and you do not owe any amounts. Your first billing cycle may be shorter or longer than a month depending on when your Equity Account is opened. We reserve the right to change the billing statement closing date

28. **Notices** Any billing statement or notice to you under this Agreement will be sent to your address on file in connection with this Equity Account or to a new address if you have notified us of the new address at least 20 days before we send the billing statement or notice We may require any notice of change of address be given in writing before updating your file Billing statements and notices will be sent to a single address only. Notice to any of you is deemed notice to all of you

29 **Tax Consequences** You should consult your tax advisor to determine if interest and other costs charged in connection with the Equity Account are deductible. We make no promises concerning the deductibility of interest under the tax laws, which are subject to change from time to time, and we will not be liable if all or a portion of the interest is not deductible. The Internal Revenue Service requires you to furnish to us your tax payer identification number ("TIN") in order to verify any deduction for mortgage interest. Your failure to provide us with your TIN may subject you to penalties imposed by the Internal Revenue Service

30. **Sharing Your Information With Our Affiliates and Others.** We have the right under applicable law to share certain transactional and experience information about your Equity Account with our affiliates and others such as consumer reporting agencies However, there might be times when we would like to share other information about you with our affiliates This information might include information that would be a consumer report under applicable law. Currently, our affiliates are engaged in other financial services businesses such as arranging insurance, deposit taking, other types of lending, and certain securities businesses While we cannot predict every reason why an affiliate would want to obtain information about you from us, generally that reason would be to offer you information about the financial services and products offered by the affiliate If you do not want us to share consumer report information about you with our affiliates, then you must contact us at 4101 Wiseman Boulevard, San Antonio, Texas 78251, Attn. Customer Service, 1-800-642-0257 Keep in mind that even if you decide to opt-out, we will continue to provide the transactional and experience information to our affiliates and others as permitted by law We also will provide information about you to those we believe have a legal right to that information.

31. **Voluntary Credit Insurance** You may be offered the ability to purchase credit insurance covering your death, disability or unemployment If offered, credit insurance is voluntary and is not required to obtain credit. If elected, you may terminate it at any time. Credit insurance will not be provided unless you sign or initial a separate document requesting such insurance.

32 **Assignment by Us of Your Equity Account.** We may assign your Equity Account, this Agreement, your Security Instrument, and any amount you owe under your Equity Account to a third party Such an assignment will not affect your obligations under this Agreement and the Security Instrument

By signing below you agree to the terms and conditions contained in this Agreement You also acknowledge receipt of a completed copy of this Agreement, including the Billing Rights Notice that follows this signature page

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

BORROWER(S):

_____ *Maryann Behrendt* _____ (Seal)
MARYANN BEHRENDT

_____ *Scott B* _____ (Seal)
SCOTT BEHRENDT

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

# YOUR BILLING RIGHTS
## Keep this Notice For Future Use

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act

<u>Notify Us In Case of Errors or Questions About Your Bill.</u> If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address given on your billing statement. Write to us as soon as possible We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights

In your letter, give us the following information

- Your name and account number.

- The dollar amount of the suspected error.

- Describe the error and explain, if you can, why you believe there is an error If you need more information, describe the item you are not sure about

<u>Your Rights and Our Responsibilities After We Receive Your Written Notice.</u> We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to the mistaken amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question on your bill And, we must tell you the name of anyone we reported you to We must tell anyone we report you to that the matter has been settled between us when it finally is

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct